UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE CAMPBELL,

    Plaintiff,

v.

HOLLAND HOME,

    Defendant.

File No.

Hon.

_____

H. Rhett Pinsky
Crystal J. Bultje
Attorneys for Plaintiff
Pinsky, Smith, Fayette & Kennedy, LLP
146 Monroe Center St., NW – Suite 418
Grand Rapids, MI 49503
616-451-8496
hrpinsky@psfklaw.com
cbultje@psfklaw.com

# COMPLAINT AND JURY DEMAND

Plaintiff Jamie Campbell, by and through her attorneys, Pinsky, Smith, Fayette & Kennedy, LLP, states as follows:

### Jurisdiction, Venue and Parties

1. This is an action requesting the Court to remedy violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and factually

1

related violations of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.*

2. This Court has jurisdiction over this Complaint under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331 and 1367.

3. Plaintiff Campbell is a female resident of Kent County, in the Western District of Michigan, Southern Division.

4. Defendant Holland Home is a skilled nursing facility, registered in Michigan and operating in the Western District of Michigan, Southern Division.

5. Venue is proper within this judicial district under 28 U.S.C. §1391(b).

## Factual Allegations

6. Plaintiff is a former employee of Holland Home and worked at the Breton Woods facility.

7. Defendant hired Plaintiff on December 31, 2018 as a certified nursing assistant.

8. As part of her job duties, Plaintiff provided direct care to Defendant's residents, including feeding, dressing, grooming, transferring, bathing, and providing other assistance to the individuals Defendant's management assigned her.

9. Defendant's patient assignments were created daily by Defendant's scheduler at the direction of and with the approval of Robert Fox, Defendant's Director of Nursing at the Breton location.

10. In January 2020, Plaintiff started being assigned to care for patient R on a regular basis.

11. R is a 85-year-old male with Parkinson's Disease. Upon information and belief, at all times relevant to this Complaint, R had no diagnosis that resulted in cognitive impairment.

12. Shortly after Plaintiff started working with R regularly, he began sexually harassing her, subjecting her both to inappropriate comments and propositions, as well as physical battery.

13. This harassment included incessant, inappropriate comments and requests, saying things like "I would love to touch you and see this tight shirt on you," "turn around so I can see you from behind," and "Come here and let me feel your body." He would tell her to "come sit" on his lap while he was exposing himself to her. He would also ask her to "come help" him, at which point he'd indicate that he wanted her to perform sex acts on him.

14. At least once, R called for her and when she responded, she found him masturbating. He told her to "come and feel" him. Once, when he was on the toilet, he refused to stop masturbating even after she asked him to stop, so she was forced to physically help him from the toilet to his wheelchair while he continued to expose and touch himself.

15. It also progressed to physical harassment. R frequently and unnecessarily touched Plaintiff, sometimes attempting to touch her breasts or other private areas of her body. He grabbed her buttocks more than once. When this happened, she would remove his hand, tell him he was being inappropriate and that he needed to stop. But this rarely, if ever, deterred him. In fact, he would tell her it

3

was "her job" to touch him whenever he asked.

16. Plaintiff was accustomed to difficult patients, but R's behavior was different. She couldn't do her job and help him without fearing that he would grope, grab, or otherwise harass and abuse her. Because of how physically close she needed to be to him to provide the level of care he needed, she was constantly vulnerable to his behavior. She was overwhelmed by this and experienced significant anxiety about working with him.

17. Plaintiff wanted to be a cooperative employee and was intent on performing her job without complaint. She wasn't sure how to approach management about the abuse and harassment she was experiencing.

18. Plaintiff decided to chart the major incidents with R, knowing that members of Defendant's management, including Mr. Fox, would review the chart notes regularly.

19. On or around the end of January 31, 2020, Mr. Fox approached Plaintiff about the incident she was charting. Plaintiff explained what she was experiencing, and Mr. Fox said he would talk to R. Plaintiff thanked Mr. Fox and told him that if R's behavior continued, she would expect to be removed from R's service. Mr. Fox did not object or otherwise respond except to say he would make sure that the behavior stopped.

20. But R's harassment of Plaintiff continued, which Plaintiff continued to chart and Mr. Fox continued to see, yet Mr. Fox continued to approve Plaintiff's assignment to R's care.

21. Upon information and belief, Mr. Fox did talk with R about his behavior, which Plaintiff learned because R responded by chastising her for telling Mr. Fox about the incidents between them. As a result, R became even more aggressive with his harassment of Plaintiff.

22. Mr. Fox never set a meeting or pursued a formal discussion with Plaintiff R's treatment of her or the notes about it she continued to chart. The only time he brought it up again was in passing, after she had clocked out for the day and she walked past his office. He called out after her, "How did things go today?" Since nothing had happened that specific day, Plaintiff told him things had gone fine. Mr. Fox never said anything else to Plaintiff about this issue.

23. Other staff members, including nurse managers, also casually talked with Plaintiff about the harassment she was experiencing with R, but when she would explain what had happened, their response was basically "ok, well just keep us updated. Let us know if it happens again." But then it would happen again, she would chart it and tell them when it happened again, and the response never changed.

24. Throughout February and March, Plaintiff and other members of Defendant's staff discussed that she should be removed from Plaintiff's service.

25. Upon information and belief, nurses, social workers, and other staff members advocated for Plaintiff to be removed from R's service, but neither Mr. Fox nor any other management stepped in to protect Plaintiff or remove her from R's service.

26. Upon information and belief, Defendant switched aids frequently as needed in other situations.

27. Upon information and belief, R was only engaging in these inappropriate behaviors against Plaintiff and no other staff, so simply removing her from his service would have solved the problem.

28. At some point, Plaintiff stopped charting even the egregious incidents, as Defendant's management didn't seem to care anyway.

29. Frustrated and unsure of what else to do, on April 7, 2020, Plaintiff wrote a letter to Ms. Sara Heethuis, Defendant's Executive Director, informing her of the situation. In that letter, Plaintiff wrote, "I feel unsafe at work, I feel disrespected, and I feel frustrated." She explained the anxiety and fear she had about working with R. She said, "I love what I do. I have been nothing but dedicated to Holland Home and all that entails," but that she felt unsupported in the "uncomfortable and hostile work environment" created by Holland Home's refusal to intervene or protect her from the continued sexual harassment.

30. On April 8, 2020, Mr. Fox issued a letter to staff with instructions on how to deal with R. He said that if R did or said anything inappropriate, staff was to leave the room temporarily until R could regain his composure. He also suggested that R's medical diagnoses "may limit his ability to 'correct'" his behavior.

31. Ms. Heethuis finally responded to Plaintiff on April 13, 2020, and asked Plaintiff to come by her office.

32. April 14, 2020, Plaintiff met with Ms. Heethuis. At this meeting, Ms. Heethuis said she completely understood the situation Plaintiff was experiencing because she had been through something similar herself at one point. She said she didn't want to involve R's family because it would only cause them to worry. However, Ms. Heethuis said she'd protect Plaintiff and explicitly promised Plaintiff that she'd never have to deal with R. again. She encouraged Plaintiff to text her if Plaintiff was ever placed on his service ever again.

33. And as promised, after this meeting, Defendant removed Plaintiff from R's service. But this change was only temporary.

34. Just a few weeks later, Mr. Fox approved another schedule that put Plaintiff back on R's service.

35. As Ms. Heethuis had instructed, Plaintiff texted her that she was back on R's service. On May 10, 2020, Plaintiff texted her saying, "R has been on my schedule all weekend. Just want to let you know it seems some people are still unsure that I am not to care for him anymore." Ms. Heethuis responded, "Ok. I will check it out tomorrow I promise."

36. Again, on May 14, 2020, Plaintiff texted Ms. Heethuis, "R was still on my group today. It's really bothersome having to address this every morning. Some aides know the situation and respect me not going in there, but that can't be said for everyone. I do not want to see the room 113 (R's room) beside my name. That is all I am asking."

37. Ms. Heethuis responded to this text saying, "I know. It's totally ok to switch the room. I also will talk to Rob about going forward but actually wanted to speak with you in person about it as it is hard on text at times."

38. As indicated in her texts, Plaintiff attempted to switch with another aid, but she was unsuccessful. Plaintiff attempted to explain to other aids that Ms. Heethuis instructed her to switch if R ended up on her service again, but without instruction from management, the other aids were not willing to switch. Some seemed to think Plaintiff was being dramatic or lazy about not wanting to care for R herself. In fact, one aid responded, "if Sara wanted you to not be on R's service, she would have made sure you were taken off of it herself."

39. Plaintiff was still on R's schedule May 18, 20, 22, 23, and 25.

40. Having asked Holland Homes for help multiple times to remove her from R's service without permanent success, Plaintiff realized Defendant did not intend to protect her against its resident.

41. Although she wanted to continue working for Defendant, but without servicing R as a client, Plaintiff resigned on May 26, 2020 in an email to Ms. Heethuis.

### Count I – Violation of Title VII of the Civil Rights Act of 1964 – Gender Discrimination and Harassment

42. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

43. Defendant violated 42 U.S.C. § 2000e–2 when it allowed discrimination and harassment against Plaintiff, failed to provide an adequate remedy for her

complaints of gender discrimination and harassment, and constructively terminated her on account of her gender discrimination and harassment.

44. Plaintiff has suffered irreparable harm, in that she has been unlawfully terminated as aforesaid, and she will continue to suffer such harm unless the relief requested herein is granted.

### Statutory Prerequisites

45. On or about February 2, 2021, pursuant to 42 U.S.C. § 2000e–5(d), Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

46. EEOC advised Plaintiff Monroe by letter dated December 20, 2021, a copy of which is attached hereto as Exhibit 1, that she was entitled to institute a civil action in United States District Court within 90 days of receipt of said letter, in accordance with 42 U.S.C. § 2000e–5(f)(1).

### Relief Sought

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Award Plaintiff damages equal to any salary, wages, bonuses, employment benefits and/or other compensation denied or lost to her by reason of violations of Title VII by Defendants, plus interest;

B. Award Plaintiff compensatory damages for mental anguish and emotional distress;

C. Award Plaintiff punitive damages;

D. Award Plaintiff her costs and reasonable attorney fees;

9

E.  Award Plaintiff such other relief as may be just and equitable.

### Count II – Violations of the Elliot-Larsen Civil Rights Act – Gender Discrimination and Retaliation

47.  Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

48.  Defendant violated the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.* when it discriminated against and harassed Plaintiff on account of gender, failed to provide an adequate remedy for her complaints of gender discrimination and harassment, and terminated her on account of her gender and/or in retaliation for her complaints of the gender discrimination and harassment.

49.  Plaintiff has suffered irreparable harm, in that they have been unlawfully terminated as aforesaid, and they will continue to suffer such harm unless the relief requested herein is granted.

### Relief Sought

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A.  Award Plaintiff damages equal to any salary, wages, bonuses, employment benefits and/or other compensation denied or lost to her by reason of violations of ELCRA by Defendants, plus interest;

B.  Award Plaintiff compensatory damages for mental anguish and emotional distress;

C.  Award Plaintiff exemplary damages;

D.  Award Plaintiff her costs and reasonable attorney fees;

E.  Award Plaintiff such other relief as may be just and equitable.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP  
Attorneys for Plaintiff

Dated: March 17, 2022        By: /s/ *Crystal J. Bultje*
                                H. Rhett Pinsky
                                Crystal J. Bultje
                                146 Monroe Center, NW, Suite 418
                                Grand Rapids, MI 49503
                                cbultje@psfklaw.com

# JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demand same.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP  
Attorneys for Plaintiff

Dated: March 17, 2022        By: /s/ *Crystal J. Bultje*
                                H. Rhett Pinsky
                                Crystal J. Bultje
                                146 Monroe Center St NW, Suite 418
                                Grand Rapids, MI 49503
                                cbultje@psfklaw.com